This is an appeal from judgments rendered in favor of the defendants in two actions brought to foreclose mortgages upon real property situated in Foster county in this state. The Northwestern National Bank of Minneapolis and the Merchants Nation Bank of Fargo, are plaintiffs in both actions. The defendant, Joseph Reiniger, was the mortgagor and owner of the land involved in one of the actions and the defendant, A.O. Snyder, was the mortgagor *Page 666 
and owner of the land involved in the other action. The mortgages were both executed for the purpose of securing to the plaintiff banks certain obligations owing to them by the Security State Bank of Brantford, North Dakota. The defenses in the two actions were quite similar; and the two actions were at the time of the trial upon stipulation consolidated and tried together. On appeal the two cases were presented together. There was only one brief and one argument, and, hence, both cases wil be considered and disposed of in one opinion.
The material facts necessary to an understanding of the issues are substantially as follows: The Security State Bank of Brantford became insolvent and closed about July 15th, 1921. At, and for sometime prior to, its closing one Ostrum was president and one Miller was cashier of the bank. For some time prior to the closing, — at least during the year 1921 — the defendants Snyder and Reiniger were stockholders and directors of the bank. Snyder was also vice-president. The two plaintiff banks were city correspondents of the Security State Bank of Brantford and the latter bank at times borrowed money from the plaintiff banks. During January or February 1991, the Merchants National Bank of Fargo received from the Brantford Bank, in due course by mail, the following written contract of guaranty:
Fargo, N.D., Jan. 11, 1921.
To the Merchants National Bank of Fargo, Fargo, North Dakota.
Gentlemen:
For value received, in consideration of the premises, and for the purpose of enabling Security State Bank, Brantford, N.D. (hereinafter known as the party of the first part) to obtain credit from you from time to time, we, the undersigned, hereby guarantee the prompt payment at maturity or at any time thereafter of any indebtedness upon which the party of the first part now is or may hereafter become obligated to you, in the nature of a loan or as an endorser or otherwise and agree to pay all costs incurred in collecting such indebtedness.
Notice of the acceptance by you of this guaranty and notice of any and all extensions of time granted by you to the party of the first part, is hereby waived by each of the undersigned; and we and each of us, further waive notice of the granting of loans, discounts or accommodations *Page 667 
and of the amount thereof, made by you to the said party of the first part.
We the signers hereof, acknowledge ourselves as jointly and severally bound to the full extent of any obligations incurred by the party of the first part, covered by this guaranty, irrespective of any representations made as an inducement to us to execute this guaranty.
This guaranty shall continue to apply to all such indebtedness or liabilities accepted or received by you and to all extensions and to changes of form of any evidences of such indebtedness or any part thereof, until written notice to you from the undersigned not to make any further advances upon the faith hereof.
N.E. Ostrum, A.O. Snyder, D.B. Miller, O.A. Dahl, Joseph Reiniger, Louis Horn, E.M. Trove, Martin Anderson, W.W. Pattee.
There is some dispute in the evidence as to when this instrument was actually executed by the signers thereto. The testimony on the part of Scott, cashier of the Merchants National Bank of Fargo, is to the effect that on January 11th, 1921, the Brantford Bank was indebted to the Merchants National Bank of Fargo in the sum of $10,000; that on that day Ostrum, the president of the Brantford Bank, called upon Scott, the cashier of the Merchants National Bank, and applied for an additional loan of $10,000; that Scott agreed to make this loan provided all the indebtedness of the Brantford Bank to the Merchants National Bank was secured by a guaranty signed by the directors of the Brantford Bank, and that he (Scott) thereupon filled in the date, January 11th, 1921, in the printed form of guaranty used by the Merchants National Bank, and handed the instrument to Ostrum, with the understanding that it was to be signed by the directors of the Brantford Bank and returned to the Merchants National Bank. Pursuant to the arrangements so made the Merchants National Bank of Fargo loaned to the Brantford Bank on January 28th or 29th, an additional $10,000.
There was introduced in evidence a letter to Scott, cashier of the Merchants National Bank, dated January 31, 1921. The letter is written on the letterhead of the Brantford Bank and is signed by Ostrum, the president of the latter bank. The body of the letter reads: *Page 668 
"Enclosed herewith you will find guaranty signed by our full board of directors, which guaranty covers all indebtedness now existing together with everything that may accumulate in the future.
"I was unable to get this guaranty to you before to-day because one of the directors was away, but hope the delay did not cause you any serious inconvenience."
Scott testified that the guaranty was enclosed with this letter. There is, however, testimony on the part of the defendants to the effect that the instrument was not executed until on or about February 20, 1921; and that when Snyder and Reiniger examined the instrument on or about July 15th, 1921, it was still undated. The two notes of the Merchants National Bank involved in this suit are dated respectively April 8, 1921, and May 10, 1921. These notes were executed in payment or renewal of notes then outstanding and owing by the Brantford Bank to the Merchants National Bank.
On or about the middle of March, 1921, the plaintiff, Northwestern National Bank of Minneapolis, received from the Brantford Bank, in due course by mail, a written guaranty, executed by the directors of the Brantford Bank including the defendants Snyder and Reiniger, which provided that "the undersigned who are shareholders of said Security State Bank hereby jointly and severally guarantee to the Northwestern Bank, its successors and assigns, the payment, principal and interest, when due of any and all notes and other evidences of debt whether secured by mortgage, pledge or otherwise, or not so secured which the Northwestern Bank may acquire by discount, rediscount, or purchase from said Security State Bank to an amount not to exceed in the aggregate at any one time $25,000, principal sum, as evidenced by said notes, and other evidences of debt. This guaranty shall extend to, and include any and all extensions and renewals of said notes and other evidences of debt."
The defendants claim that their signatures to both of these guaranties were obtained by the fraud of the president and cashier of the Brantford Bank. There is, however, under the evidence not the slightest basis for finding that the plaintiff banks had any knowledge or notice whatsoever of such fraud. And the conclusion is irresistible that so far as the plaintiff banks are concerned they received the written guaranties in good faith and acted upon them in good faith. The defendant *Page 669 
ants claim that they did not know the terms of the guaranties until on or about July 15th, 1921, after the Brantford Bank closed. They admit, however, that at this time they became aware of the guaranties and the terms thereof, and that at that time they notified the representative of the plaintiff banks in possession of the guaranties that their signatures to the guarantees had been procured through the fraud of Ostrum and Miller, the president and cashier of the Brantford Bank. They further testified that the representative of the plaintiff banks insisted that the guaranties were binding and that he claimed the plaintiff banks had no knowledge or notice of any fraud practised by Ostrum and Miller in obtaining the signatures of the defendants thereto. On October 4, 1921, a conference was arranged at Brantford at which the two plaintiff banks were represented respectively by the cashier of one and the assistant cashier of the other. They were, also, represented by Judge Spalding, of Fargo, who acted as attorney for the two banks. Prior to this, the two plaintiff banks had notified the two defendants by mail of the failure of the Brantford Bank and demanded payment of the obligations claimed to be covered by the guaranties. At the meeting held on October 4, 1921, the two defendants and all the directors of the Brantford Bank, with the exception of Ostrum, Miller and one Pattee were present. The affairs of the closed bank were discussed. It was found and stated that the plaintiff banks held collateral notes aggregating some $90,000, securing the indebtedness of the Brantford Bank to the plaintiff banks. Some discussion was had as to the value of these collateral notes, and, according to the testimony of the defendants, representatives of the two banks expressed the view that the collateral was of sufficient value to pay the indebtedness due to the two banks. Some discussion was had, also, as to the desirability of enforcing collection of the collateral, and the representatives of the two plaintiff banks agreed that they would extend the payment of the obligations due to the two banks from the Brantford Bank, and claimed to be covered by the written guaranties, until November 1st, 1922, provided the guarantors would furnish additional security in the form of mortgages upon real estate. The plaintiff Reiniger testified that he offered to give a mortgage on one half section of unincumbered land; that Scott, the cashier of the Merchants National Bank of Fargo took him to one side and said, in effect, that he, *Page 670 
Reiniger, must put in an additional half section. In other words, that Reiniger must give a mortgage on a section of land in all. That Reiniger thereupon agreed to do this. A written agreement embodying the terms of the adjustment then reached was prepared and signed by the parties and acknowledged before a notary public on that date. The agreement then executed reads as follows:
"This agreement made this 4th day of October, 1921, by and between the Northwestern National Bank of Minneapolis, Minn., and the Merchants National Bank of Fargo, N.D., parties of the first part and Joseph Reiniger, O.A. Dahl, Martin Anderson, Louis Horn, A.O. Snyder and E.M. Trove, parties of the second part, Witnesseth: that whereas the Security State Bank of Brantford, N.D., is indebted to the said parties of the first part in the sums of about $21,000, and $18,000, respectively, which indebtedness is past due, and whereas said second parties have guaranteed in writing the payment of all such indebtedness to said first parties, and whereas a considerable portion of the collateral held by each of said parties as security for such indebtedness cannot at present be realized upon and whereas said second parties and each of them desires that so much of said indebtedness as may remain unpaid after the collection and application of such collateral as said first parties or either of them may deem it advisable to collect during the fall of 1921 be extended and carried by said first parties until the fall of 1922 and that said Guaranty be not enforced.
"Now, therefore, in consideration of said second parties giving the security hereinafter provided for, and the further agreements and covenants by them made and hereinafter contained, it is agreed by said first parties, each for itself, that they will not attempt to enforce said guaranty against either of said second parties before the first day of November, 1922, unless a majority of said second parties demand the enforcement thereof "against any one or more of said second parties at an earlier date, and that said first parties will make such effort to collect the collateral held by them or either of them in the meantime as the party holding the same may deem reasonable and necessary, and that the proceeds of such collections shall be applied as collected in accordance with the terms of the guaranties held by the first parties respectively.
"The parties of the second part each for himself agrees on demand *Page 671 
of either of said first parties to execute mortgages to said first parties jointly or severally or to a third party as trustees or in such other form as said first parties may be advised are best adapted to secure the fulfilment of said guaranty upon the following described real estate, to wit:
"A.O. Snyder, E 1/2 of Sec. 3-146-64, Foster county, N.D.; O.A. Dahl, W 1/2 of Sec. 6-147-64, Foster county, N.D., and NE 1/4 of Sec. 12-147 65, Foster county, N.D.; Louis Horn, SW 1/4 of 17-149-64, NW 1/4 20-149-64 and SE 1/4 of 18-149-64 and NE 1/4 19-149-64, all in Eddy county, N.D.; Martin Anderson, E 1/2 of Sec. 29-148-65, Eddy county, N.D.; E.M. Trove, NW 1/4 Sec. 1-18-9, Harding county, S.D., and SE 1/4 Sec. 8-18-9, Harding county, S.D.; Joseph Reiniger, W 1/2 Sec. 36-147-65, and E 1/2 of Sec. 34-147-65, Foster county, N.D.
"Subject only to the unpaid portions of such liens if any as may now be of record against the same.
"Said second parties each for himself further agrees that said first parties each as to the collateral held by itself may deal with the same as it deems best for the interests of the parties hereto, may renew or extend the same or any part thereof or may compromise or compound the same or any part thereof, if deemed advisable by the party holding the same, and that no obligation of either of the second parties to either of said first parties shall be released or impaired by any such renewal, extension or compromise.
"It is agreed by said second parties that this agreement is executed by them and shall remain in full force and effect regardless of whether the other signers of the guaranty above referred to become parties hereto or not but that said second parties will use their best endeavors to have such remaining guarantors give security to the first parties and in other respects join in this agreement.
"In testimony whereof the parties hereunto have executed this agreement on the day and year first above written."
Subsequently the mortgages in suit were prepared in accordance with this agreement. The mortgages were transmitted by mail from Fargo to Brantford to the reciver, or deputy examiner, in charge of the bank, and were executed and acknowledged by the defendants before a notary public on October 15, 1921, and returned to the plaintiffs.
The actions before us were instituted to foreclose these mortgages. *Page 672 
The complaint alleges not only the execution and delivery of the mortgages but the various transactions leading up thereto, including the agreement of October 4th, 1921.
The answer of the defendant Reiniger, aside from certain denials and admissions, is to the effect that he admits that he signed the guaranties held by the two plaintiff banks but alleges that his signature thereto was procured through the false representations and fraud of D.V. Miller and Nels Ostrum who at the time of making such false representations were acting as agents of the two plaintiff banks; that the said Miller and Ostrum represented to said Reiniger that the two banks "held collateral security greatly in excess of any money which said banks might have advanced, or did advance, to said Brantford bank;" and that the defendant was signing said guaranties only in the capacity of a director and only obligated the Brantford bank thereby; and that the defendant relied upon said representations in signing the guaranties.
The answer admits the execution of the agreement to mortgage, dated October 4th, 1921, but alleges that the signature of Reiniger to that instrument was procured by plaintiff's agents through fraud and duress in this that said plaintiffs' agent represented to said Reiniger that the banks "had the guaranty of this defendant for large sums of money furnished to the Security State Bank of Brantford and that regardless of the representations made at the time said guaranty was procured that the defendant was bound thereby." It is further alleged that the defendant was intimidated by the representatives of the plaintiff banks and compelled to sign said instruments by reason of threats on the part of such representatives to institute legal proceedings against said defendant and attach plaintiffs' property and cause the same to be sold in satisfaction of the plaintiffs' claims. It is further alleged that the banks have failed to properly handle the collateral security held by them, and an accounting is demanded as regards such collateral, and the collections made thereon.
The answer of the defendant Snyder, aside from certain specific admissions and denials, is to the effect:
"That the agents and representatives of plaintiffs came to this defendant and stated to him that all of said notes executed by said Security State Bank were for money loaned to said Security Bank *Page 673 
on the strength of an alleged guaranty which this defendant had signed and which is set forth in said complaint; that at said time and place said agents and representatives of plaintiffs stated to this defendant that they, the plaintiffs, had $90,000 in paper which had been turned over to them as collateral security to said notes; that they had made a thorough investigation of same and that it would unquestionably more than pay off every obligation of said Security State Bank; that the defendant knew nothing of banking nor had any knowledge of the business affairs of said bank, and believed what the said agents and representatives of said bank said, and believing that they told the truth, and acting upon these fraudulent concealments and misrepresentations he was induced to sign said mortgage, which it is sought hereunder to foreclose; this being one of the causes which induced him to sign same, another being that at the same time and place said agents and representatives represented to the defendant that they were in position to ruin him financially at once and that they had already done this to more than one party who had sought to avoid their plans and requests and that the same troubles would come to this defendant unless he signed the mortgage and that he was under duress forced to sign the same; later developments showed that not one cent of the money loaned by the plaintiffs to said Security State Bank was an obligation incurred on account of said guaranty nor since said guaranty, but were only renewal of obligations which they held prior to said guaranty and which were collectible before said guaranty was signed, the said Security State Bank being insolvent and which fact was known to the plaintiffs at the time they undertook to get such guaranty; that the $90,000 worth of paper which they represented to be good they knew to be worthless and knew that it would not, when realized upon for all it was worth, reduce the liabilities of this insolvent institution; this defendant is a farmer and has always been one and knows nothing of banking nor affairs of this character, and knew that the representatives and agents of this plaintiff were familiar with said affairs and believed in them and relied upon their representations when he signed said mortgage."
The case was tried upon the issues thus raised. The trial court made findings in favor of the two defendants, and ordered judgment that plaintiffs' actions be dismissed and that the mortgages sought to *Page 674 
be foreclosed be cancelled and annulled. The plaintiffs have appealed and demand a trial anew in this court.
After a careful consideration of all the evidence we have reached the conclusion that the judgments appealed from must be reversed and that judgments must be rendered in favor of the plaintiffs. In this case we are dealing with mortgages, which the undisputed evidence shows were knowingly and intentionally executed and delivered by the two defendants. These mortgages are presumed to be valid unless and until the defendants have, by proper evidence, established the contrary. While it is averred in the answer that Ostrum and Miller (the president and cashier of the Brantford bank) acted as agents for the plaintiff banks, in procuring the signatures of the defendants to the guaranties, there is not the slightest evidence tending to establish such averments. On the contrary the evidence is all to the other effect. And there is, in our opinion, no room for doubt but that the two plaintiff banks received the written guaranties without any knowledge that any deception had been practised by Miller and Ostrum upon the parties who signed them; and, we think, the evidence clearly establishes that the two banks received and acted upon the guaranties in the very best of faith. In other words, we are of the opinion that the evidence in this case clearly establishes that the written guaranties were and are valid instruments in the hands of the banks, creating such obligations on the part of the defendants as follows from the terms of the instruments and the transactions had thereunder. We do not find it necessary, however, to enter into any extended discussion as to the precise rights or obligations fixed by these guaranties; for it is an undisputed fact that on July 15th, 1921, the two defendants were fully informed of the contents of the two written guaranties; that shortly thereafter written demands were made upon the defendants by the two banks for payment of the obligations of the Brantford bank; that thereafter on October 4th, 1921, — after a great deal of discussion had at a conference, at which all of the directors of the Brantford bank — with the exception of Ostrum, Miller and one Pattee were present — a written agreement was made reciting all the past transactions; that by the terms of such agreement the two banks agreed to extend the time of payment of the indebtedness of the Brantford bank and the indebtedness of the defendants, under the guaranties, to November 1922; and *Page 675 
that the plaintiffs at the same time agreed in the meantime not to enforce against the makers thereof the collateral notes which the plaintiff banks held as security for their indebtedness; that pursuant to this agreement the mortgages in suit were later prepared and transmitted by mail and were duly executed and acknowledged by the defendants and returned to the plaintiff banks. The record is wholly silent as to what occurred at the time the mortgages were executed and acknowledged, but there is no contention that any representative of the plaintiffs was present at that time. The mortgages so executed contain full recitals of the consideration therefor. The notes of the Brantford bank to the two plaintiff banks are recited, and reference is made to the agreement of October 4th, 1921; and it is stated that an extension of time of payment has been granted by the plaintiff banks (the mortgagees named in the mortgages) of the notes given by the Security State Bank of Brantford to said mortgagees, whereby such indebtedness has been extended until November 1st, 1922.
In our opinion the agreement of October 4th, 1921, shows and furnished ample consideration for the mortgages executed and delivered conformable thereto. At the time that agreement was made the two plaintiff banks held promissory notes executed to them by the Brantford bank aggregating some $38,000, and as security for this indebtedness they held collateral notes aggregating some $90,000. At the time of the closing of the Brantford Bank and for some time prior thereto the two defendants had been stockholders and directors of that bank. In the event the assets of the Brantford bank proved insufficient to pay the claims against it these defendants were subject to an assessment for their added stockholder's liability.
The contention that the agreement of October 4th and the subsequent mortgages were obtained from the defendants by duress is, in our opinion, so obviously unfounded as to merit no consideration. We have failed to find the slightest basis in the evidence for any such contention. The testimony of the defendants, themselves, when given the strongest possible effect, wholly fails to establish duress. The only thing such testimony tends to establish is that the representatives of the plaintiff banks had a frank discussion with the defendants and gave them to understand that the plaintiff banks would proceed to enforce their legal claims through orderly judicial proceedings; but *Page 676 
that if satisfactory security was given by way of real estate mortgages they would be willing to grant extension of time of payment of the indebtedness owing to these banks by the Brantford bank to the end that the amount of the indebtedness might, if possible, be realized out of the collateral notes held by the banks.
We are, also, of the opinion that the evidence wholly fails to establish the contention on the part of the defendants that there was any false or fraudulent representations on the part of the plaintiff banks as to the value of such collateral. It is true, there is testimony on the part of the defendants to the effect that opinion was expressed on the part of a representative or representatives of the plaintiff banks that the greater portion of the collateral was good and that only "about $6,000 of it was bad;" yet, on October 4th, 1921, the defendants knew that only a few thousand dollars had been collected out of the entire $90,000 of collateral. And the fact seems to have been recognized by all parties that the makers of the collateral notes were not in position to make payment that fall unless payment were enforced. No evidence was offered on the part of the defendants at all showing what the collateral was worth at that time, or at any other time; and so far as the record shows every opinion expressed by the representatives of the plaintiff banks probably was honestly expressed. The defendants have failed to establish any fraud on the part of the plaintiff banks as regards the settlement made October 4th, 1921, or the mortgages executed pursuant thereto. See Emerson-Newton Implement Co. v. Cupps,15 N.D. 606, 108 N.W. 796.
The evidence also shows that in subsequent dealings the defendants recognized the validity of the transaction and the good faith of the parties at the time it was entered into. Thus, as late as February, 1923, the defendant Reiniger wrote a letter to Mr. Scott, the cashier of the Merchants National Bank of Fargo, with the request that he forward the same to the Northwestern National Bank of Minneapolis. In this letter Reiniger said: "Dear Mr. Scott: I thought the matter over regarding our guaranty. Yes the loss will be heavy if conditions do not turn more favorable. Making loans may not cover it. Now Mr. Scott there is no question your good-will has been trespassed upon in the dealings you have had with us but I request you place the blame where it belongs. If we come forward and extend the right hand you *Page 677 
will meet us on the same ground and consider our side as long as we act on the square, cause you no loss or annoyance. I am speaking for myself only. If the loss is too heavy to cover it by loans I will deed the land involved over to you and you sell it back to me at cost, give me the lowest interest rate possible," etc. In a postscript to the letter he makes suggestions as to the enforcement of the obligations against other guarantors and mortgagors and suggests that actions be instituted promptly against one of such parties.
As we construe the evidence in this case the mortgages sought to be foreclosed by the plaintiffs are valid contracts, intentionally and deliberately entered into by the defendants who received therefor the very consideration which the parties contemplated.
The judgments appealed from are therefore reversed and the causes remanded with directions to enter judgments in favor of the plaintiffs.
JOHNSON, BIRDZELL, NUESSLE, and BURKE, JJ., concur.